

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

MAY 1 6 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

1   IN THE UNITED STATES DISTRICT COURT
2   FOR THE NORTHERN DISTRICT OF GEORGIA
3   ATLANTA DIVISION
4

5   NICOLE MCHENRY

6   Plaintiff

7        v.

8   LAW SCHOOL ADMISSION COUNCIL, INC.

9   and PROMETRIC LLC

10  Defendants

11

CIVIL ACTION NO: 1:25-CV-2735

**COMPLAINT**

DEMAND FOR JURY TRIAL

12  **COMPLAINT FOR VIOLATIONS OF THE AMERICANS WITH**
13  **DISABILITIES ACT, SECTION 504 OF THE REHABILITATION ACT,**
14  **AND RELATED STATE LAW CLAIMS**
15

16  **PRELIMINARY STATEMENT**

17        This is a civil action brought by Nicole McHenry, a 100% service-connected

18  disabled veteran and first-time law school applicant to enforce her rights under

19  Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§

20  12181–12189, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

21  Plaintiff seeks redress for Defendants' repeated failure to provide adequate

22  accessible testing conditions during her attempts to take the Law School

23  Admission Test ("LSAT") in April 2025, despite having received approved testing

24  accommodations for documented sensory processing challenges, vestibular

Exhibit List and Exhibits A-I submitted herewith in support of this Complaint

1    dysfunction, Sjögren's syndrome, severe migraines, rheumatoid arthritis, and

2    anxiety-related testing impairments. These conditions interfere with Plaintiff's

3    ability to read for extended periods, tolerate scrolling or fast-paced text, and

4    visually engage with computer screens without triggering dizziness, headaches, eye

5    pain, and cognitive shutdown.

6        Defendants Law School Admission Council, Inc. ("LSAC") and Prometric

7    LLC ("Prometric") administer high-stakes professional examinations and are

8    legally obligated to ensure that individuals with disabilities have full and equal

9    access to their services. Plaintiff was granted accommodations to reduce visual and

10   cognitive strain—specifically, to avoid dense text, scrolling, chat-based

11   troubleshooting, and prolonged screen interaction. Despite this, Defendants

12   knowingly subjected her to procedures that directly contradicted those

13   accommodations. Plaintiff was forced to troubleshoot her testing environment for

14   nearly two hours, repeatedly re-enter information, engage in cognitively

15   demanding multitasking, and endure small screen-based communications—all of

16   which caused physical distress and ultimately impaired her performance on the

17   exam.

18       The violations were not isolated or accidental. Plaintiff verbally reminded

19   Prometric personnel in real time of her accommodations and disclosed symptoms

20   of dizziness, exhaustion, and confusion. Rather than respond with accommodation-

1   sensitive alternatives, Defendants ignored her disclosures and continued to enforce

2   inaccessible troubleshooting procedures that exacerbated her disabilities. These

3   failures directly contributed to a materially lower LSAT score and rendered

4   Plaintiff ineligible for law school admission for the Fall 2025 cycle.

5       During her second testing attempt, Plaintiff was logged in for nearly nine

6   hours—from the time she first signed on about an hour before the exam through

7   the end of the test session. This included almost three hours of troubleshooting due

8   to repeated proctoring and system failures, followed by extended breaks and the

9   test itself. The extraordinary length of the day was not due to testing complexity,

10  but to the cognitive and physical toll caused by Defendants' failure to implement

11  accommodations. By the end, Plaintiff could no longer focus and was forced to put

12  her head down on the table and close her eyes—something she had already done

13  several times throughout the exam just to try to quell the dizziness.

14      Despite being on notice of these failures, LSAC denied any wrongdoing,

15  offered superficial remedies, and blamed Plaintiff's internet connection—without

16  evidence—while failing to acknowledge their legal obligation to implement her

17  approved accommodations. As a result, Plaintiff was denied a fair opportunity to

18  demonstrate her academic potential, disqualified from the Fall 2025 law school

19  admissions cycle, and suffered significant physical, emotional, and professional

20  harm. Defendants' narrow suggestion that accommodations apply only during

3

1  active test timing reflects a legally unsupported interpretation of the ADA and

2  ignores longstanding regulatory and judicial authority requiring accessibility

3  throughout the entire testing process.

4  **SECTION I: PARTIES**

5      1. Plaintiff Nicole McHenry is a citizen of the United States and a resident of

6  the State of Georgia. Plaintiff is a 100% service-connected disabled veteran whose

7  disabilities include vestibular and cognitive processing impairments. Plaintiff was

8  an applicant for the Law School Admission Test ("LSAT") and, at all relevant

9  times, qualified as an individual with a disability within the meaning of the

10  Americans with Disabilities Act, 42 U.S.C. § 12102, and Section 504 of the

11  Rehabilitation Act, 29 U.S.C. § 794. Plaintiff requested and was granted testing

12  accommodations for the LSAT by Defendant Law School Admission Council

13  (**Exhibit F**).

14      2. Defendant Law School Admission Council, Inc. ("LSAC") is a nonprofit

15  corporation headquartered at 662 Penn Street, Newtown, Pennsylvania 18940.

16  LSAC administers the LSAT and is responsible for ensuring that the administration

17  of the test complies with federal disability rights laws. LSAC receives federal

18  funding and is subject to Section 504 of the Rehabilitation Act. It is also a public

19  accommodation within the meaning of Title III of the ADA, 42 U.S.C.

1   §12181(7)(J), as it offers examination-related services and professional

2   certification processes.

3       3. Defendant Prometric LLC ("Prometric") is a Delaware limited liability

4   company with its principal place of business at 1501 South Clinton Street,

5   Baltimore, Maryland 21224. At all relevant times, Prometric acted as an agent and

6   third-party contractor of LSAC, providing remote proctoring and technical

7   infrastructure for the LSAT. Prometric is a recipient of federal financial assistance

8   through its administration of federally funded examinations and is therefore subject

9   to the requirements of Section 504 of the Rehabilitation Act. Prometric also

10  qualifies as a public accommodation within the meaning of Title III of the ADA,

11  42 U.S.C. § 12181(7)(J), by offering professional examination and credentialing

12  services.

13                  **SECTION II: BACKGROUND**

14      4. Plaintiff is a 100% service-connected disabled veteran who was approved

15  by the Law School Admission Council (LSAC) for testing accommodations based

16  on medically documented vestibular challenges and cognitive processing

17  difficulties.

18      5. The LSAT is a high-stakes, standardized examination used as a principal

19  gatekeeping requirement for admission to American Bar Association–accredited

1   law schools. For candidates with disabilities, equal access to this examination is

2   essential to prevent exclusion from the legal profession.

3        6. Title III of the Americans with Disabilities Act (ADA) and Section 504 of

4   the Rehabilitation Act require testing entities and their agents to provide testing

5   accommodations that ensure equal opportunity for individuals with disabilities.

6        7. Accommodations are not optional courtesy measures—they are civil

7   rights protections that must be implemented in full, without imposing additional

8   burdens on the test taker.

9        8. Among the accommodations approved for Plaintiff were provisions

10  intended to reduce visual strain, cognitive overload, and multitasking demands.

11  These included minimizing screen time, avoiding dense text and scrolling-based

12  troubleshooting, and ensuring alternative forms of communication in place of live

13  chat or fast-paced text exchanges.

14       9. LSAC contracts with third-party vendors such as Prometric LLC to

15  deliver its remote LSAT administrations. While outsourcing test administration,

16  LSAC remains legally responsible under the ADA and Section 504 for ensuring

17  that its agents do not engage in discriminatory practices or fail to implement

18  approved accommodations. Despite repeated prior complaints about inaccessible

19  remote testing procedures, LSAC and Prometric failed to adjust their protocols,

20  resulting in an ongoing pattern of disability-based testing barriers.

6

1          **SECTION III: FACTS**

2          10.Prior to the April 2025 LSAT, Plaintiff submitted a formal

3    accommodation request to LSAC describing multiple medical and cognitive

4    impairments (**Exhibit A**). In that submission, Plaintiff disclosed sensory

5    processing challenges, vestibular difficulties affecting reading, migraines that limit

6    her ability to use computer screens for prolonged or uninterrupted periods, and a

7    medical condition impairing sustained eye movement. She also reported that these

8    impairments, when combined with rheumatoid arthritis, had triggered a specific

9    anxiety disorder that causes dizziness and cognitive shutdown during high-pressure

10   test environments.

11         11.These disclosures were accepted by LSAC as the basis for her approved

12   Accommodations (**Exhibit F**), which were intended to prevent foreseeable harm

13   and ensure equal access to the LSAT.

14         12.Although the documentation submitted by Plaintiff's medical providers

15   did not explicitly use the term "vestibular," Plaintiff clearly described the

16   associated symptoms—such as dizziness, disorientation, screen intolerance, and

17   eye movement difficulty—in her own narrative as part of the formal

18   accommodation request (**Exhibit A**). Under the ADA and Section 504,

19   accommodations must be granted based on functional limitations, not diagnostic

20   language alone. Therefore, Defendants were on constructive notice of Plaintiff's

7

1   qualifying impairments and were obligated to implement accommodations

2   accordingly.

3      13. On April 14, 2025, Plaintiff attempted to take the LSAT via remote

4   administration using Prometric's online platform. Despite having a valid

5   confirmation number, Plaintiff was unable to begin the exam for over 30 minutes

6   because the testing platform repeatedly displayed an error message indicating that

7   her confirmation number was invalid. This was a system-generated error unrelated

8   to Plaintiff's internet connection or user input. After finally gaining limited access

9   to the test session, Plaintiff experienced an additional 30 plus minute delay because

10  the platform failed to upload her government-issued identification, again

11  generating error messages that prevented test initiation. These failures reflected

12  system-level malfunctions outside of Plaintiff's control and not attributable to any

13  network connectivity or procedural errors by Plaintiff.

14     14. Plaintiff spent more than an hour attempting to troubleshoot these issues.

15  During that time, she was not provided any human assistance or offered an

16  alternative method to complete the exam consistent with her accommodations.

17     15. Plaintiff was subsequently informed that the time spent on

18  troubleshooting would be deducted from her approved testing time, despite the

19  delays being caused by system errors outside her control.

20     16. Completely overwhelmed and mentally exhausted from trying to

8

1    troubleshoot, re-explain her situation and manage repeated login failures—while

2    simultaneously weighing the disastrous consequence of losing her accommodated

3    testing time—Plaintiff contacted LSAC. After nearly two hours of troubleshooting,

4    she was advised by an LSAC representative that she could instead take the makeup

5    exam.

6        17. On April 22, 2025, Plaintiff attempted to take the LSAT a second time.

7    For the first 30 minutes of the session, Plaintiff attempted to connect to a live

8    proctor but repeatedly received a "network error" message (**Exhibit G**).

9        18. Plaintiff made approximately 30 separate attempts to connect, with each

10   attempt lasting around 90–100 seconds.

11       19. Plaintiff also experienced the recurring "invalid confirmation number"

12   error during the April 22 session, similar to the issue encountered on April 14.

13   Although this error subsided after several attempts, its recurrence caused additional

14   delay and contributed to Plaintiff's escalating cognitive strain and frustration.

15   These compounded issues further impaired Plaintiff's ability to prepare mentally

16   for the exam and exacerbated her documented disabilities.

17       20. At the same time, Plaintiff was on hold waiting to reach Prometric

18   technical support, attempting to resolve the issue.

19       21. Each time the system displayed an error message it prompted Plaintiff to

20   try again by reentering all required login and verification information. This

1  repetition significantly added to the cognitive strain, stress, and multitasking

2  burden, further impairing Plaintiff's ability to focus and prepare for the exam.

3      22. This dual-tasking—attempting to connect with the live proctor while

4  simultaneously waiting for Prometric technical support—required Plaintiff to

5  engage in overlapping, cognitively demanding tasks that caused significant mental

6  strain and exacerbated her conditions.

7      23. Even after waiting on hold to reach Prometric technical support, Plaintiff

8  was transferred one or more times and required to repeat her situation to different

9  Prometric representatives who lacked the training or authority to resolve system-

10  level issues. These individuals asked numerous repetitive questions but failed to

11  provide meaningful assistance. By the time Plaintiff finally reached a qualified

12  technical support agent, she was already exhausted and cognitively drained.

13      24. It was at this point that Plaintiff was required to scroll through large

14  blocks of dense troubleshooting text—despite having explicitly informed the

15  representative that she had approved accommodations for vestibular and

16  processing difficulties that made scrolling and visual overload medically

17  inappropriate.

18      25. Plaintiff verbally told multiple Prometric representatives that she had

19  approved accommodations, that the troubleshooting process was physically

20  affecting her, and that she was experiencing dizziness and cognitive exhaustion

1    (see **Exhibit G** for one of the repeated error prompts that triggered these

2    symptoms). Despite these disclosures, Defendants continued to require her to

3    proceed with the same visually intensive and cognitively overwhelming

4    procedures.

5    25.1 Additionally, during the April 22, 2025 chat session, Plaintiff

6    requested to speak with a supervisor after repeated failed attempts to

7    receive accommodation-sensitive support. Despite this clear request

8    for escalation, the representative ignored Plaintiff's request and

9    continued providing dense, scroll-based instructions that exacerbated

10   her symptoms. This refusal to escalate to a supervisor, in the face of a

11   known accommodation need, reflects a failure to engage in the

12   interactive process required under the ADA and Section 504.

13

14   25.2 Furthermore, during the same April 22, 2025 chat session, after

15   Plaintiff reiterated that the support method was exacerbating her

16   medical condition and questioned whether the representative was

17   intentionally attempting to confuse her, the representative threatened

18   to disconnect the chat session. This threat was issued not in response

19   to abusive language, but after Plaintiff expressed legitimate frustration

20   over the continued disregard of her accommodations. Such a response

1          constitutes a punitive and retaliatory action against a disabled test-

2          taker asserting her federally protected rights, in violation of the

3          ADA's requirement to engage in interactive and effective

4          communication. This escalation further compounded Plaintiff's

5          cognitive distress and reinforced Prometric's failure to provide

6          accessible, accommodation-sensitive support. (See **Exhibit B**.)

7      26. The chat platform Plaintiff used to request assistance during the April 22

8   exam was explicitly designated by Prometric as the support channel for test-takers

9   with accommodations. This is confirmed by Prometric's own website (**Exhibit C**),

10  which directs users with approved accommodations to the specific chat interface

11  Plaintiff accessed (see also **Exhibit B**). Therefore, Prometric cannot plausibly

12  claim it was unaware of Plaintiff's accommodation status during the interaction.

13  The use of a platform designated for disabled test-takers further underscores

14  Prometric's obligation to provide responsive, accessible communication under the

15  ADA and Section 504, and its failure to do so constitutes a violation of those

16  federal statutes.

17     27. No alternative format or accommodation-sensitive process was provided

18  (**Exhibit C**). Plaintiff was forced to continue troubleshooting in a way that

19  exacerbated her symptoms and directly violated the accommodations approved by

20  LSAC.

1    27.1 During the April 22 exam session, Plaintiff began experiencing

2    dizziness and cognitive shutdown even before the test began and was forced

3    to put her head down several times during the test just to cope with

4    worsening symptoms. The physical distress intensified over time and

5    culminated during the scheduled break, at which point Plaintiff collapsed in

6    her guest room and feared she might lose consciousness. She briefly spoke

7    to her son and asked him to bring her food and water to stabilize her

8    condition. Her son, alarmed by her appearance and condition, began to cry

9    and questioned whether she should continue the exam. When the proctor

10   observed this interaction, Plaintiff explained that it was due to a medical

11   episode and related to her pre-approved accommodations for vestibular and

12   cognitive impairments—particularly in light of the extensive troubleshooting

13   required prior to the exam. The proctor responded by stating that if Plaintiff

14   spoke to anyone again during the break, she would be removed from the test.

15   Plaintiff was not aware of any policy prohibiting medically necessary

16   interaction during scheduled breaks, especially considering her

17   accommodations and the exceptional strain she had already endured. The

18   proctor's failure to recognize the health-related nature of the interaction, and

19   the threat of expulsion despite Plaintiff's explanation, caused substantial

1    emotional distress, further aggravated Plaintiff's symptoms, and reflected a

2    rigid, unlawful disregard for her disability-related needs.

3

4    27.2 After the April 14, 2025 exam failed due to unaddressed accessibility

5    barriers, Plaintiff engaged LSAC directly and was told she could call them if

6    problems recurred. This acknowledgment—combined with LSAC's prior

7    awareness of Plaintiff's approved accommodations and the technical barriers

8    she faced—gave rise to a duty to communicate those issues to Prometric and

9    to ensure compliance during the April 22 retest. LSAC failed to do so. This

10    omission directly contributed to the recurrence of the same violations and

11    demonstrates that LSAC remained jointly responsible for the conditions

12    under which Plaintiff was tested.

13
14
15    **POST-INCIDENT COMMUNICATIONS AND DEFENDANTS' FAILURE**
16    **TO MEANINGFULLY ENGAGE**
17

18    28. In the aftermath of these events, Plaintiff contacted both LSAC and

19    Prometric to report the accessibility failures and request appropriate remedial

20    action. Her communications and the responses (or lack thereof) from each

21    Defendant are outlined below.

1      29. On April 23, 2025, shortly after the April 22 LSAT administration,

2  Plaintiff sent a detailed email to senior leadership at both LSAC and Prometric.

3  The message was addressed to Steve Udell, Prometric's Chief Executive Officer;

4  Kevin Pawsey, Prometric's Chief Product and Technology Officer; and Sudha

5  Setty, LSAC's President and Chief Executive Officer. In that message, Plaintiff

6  requested accountability and proposed three corrective actions: (1) a formal

7  investigation into the handling of the April 14 and April 22 exams; (2) written

8  assurance of future compliance with ADA and Section 504 obligations; and (3)

9  policy reforms allowing test-takers with relevant accommodations to access voice-

10  based or other non-chat-based support methods.

11      30. On April 29, 2025, Ade Galloway, Prometric's Senior Vice President of

12  Legal Affairs, responded on behalf of Prometric. Mr. Galloway acknowledged

13  Plaintiff's concerns and stated that Prometric would conduct an internal

14  investigation and follow up with additional findings. At the time of this response,

15  no substantive resolution or investigative findings had been provided.

16      31. On April 30, 2025, after receiving a materially impaired LSAT score,

17  Plaintiff sent a follow-up message to both organizations reiterating the harm

18  caused and setting a final deadline of May 13, 2025, to resolve the matter before

19  legal action would be pursued.

1    32. On May 7, 2025, LSAC issued a written response to Plaintiff's

2    complaint, offering a refund, a free retake, and score cancellation. This offer did

3    not include acknowledgment of wrongdoing and failed to address the specific

4    accessibility failures raised by Plaintiff (**Exhibit E**).

5    33. On May 13, 2025, Prometric issued a formal follow-up response through

6    Mr. Galloway, denying any wrongdoing, asserting that all approved

7    accommodations had been provided, and attributing the technical failures to factors

8    outside of Prometric's control. This response failed to address the specific

9    accommodation failures raised by Plaintiff, provided no documentation of the

10    purported investigation, and offered no corrective action. Beyond this, Prometric

11    has not taken any meaningful steps to engage with Plaintiff or resolve the matter.

12    34. Following Plaintiff's complaints about the April 2025 LSAT

13    administrations, LSAC offered a full refund, a free retake, and agreed to remove

14    Plaintiff's test score from its records. These offers were not made pursuant to any

15    general policy or available to all test takers, but they were extended specifically in

16    response to Plaintiff's allegations of discrimination. While LSAC did not admit

17    fault, these remedial actions demonstrate a recognition that Plaintiff's testing

18    experience was materially compromised and that the testing environment failed to

19    comply with LSAC's obligations under the ADA and Section 504.

1    35. While LSAC issued a written response that deflected responsibility and

2    placed blame on Plaintiff, Prometric failed to respond at all. No acknowledgment

3    of Plaintiff's concerns, requests, or proposed resolutions was received from

4    Prometric, despite direct outreach to multiple members of its executive leadership

5    team.

6    36. Plaintiff's intent in contacting both LSAC and Prometric was to promote

7    accountability and prevent future harm. She requested three specific actions: (1) a

8    formal investigation, (2) a written commitment to ADA and Section 504

9    compliance, and (3) policy reforms to ensure accessible, non-chat-based

10   communication options for disabled test takers. While LSAC provided a limited

11   response, Prometric's complete silence—following direct, good faith

12   engagement—demonstrates a disregard for its obligation to accommodate and

13   communicate with individuals with disabilities under federal law.

14   37. On May 13, 2025, in response to Plaintiff's April 23, 2025 complaint

15   and her April 30, 2025 follow-up communication setting a final deadline,

16   Prometric's Senior Vice President and Legal Counsel, Ade Galloway, issued a

17   formal response. In this letter, Prometric denied any wrongdoing, asserted that all

18   approved accommodations had been provided, and attributed the technical failures

19   during Plaintiff's April 14 and April 22 LSAT administrations to Plaintiff's alleged

17

1    failure to follow scheduling instructions and to internet connectivity issues beyond

2    Prometric's control.

3         38. Prometric further refused to consider Plaintiff's requests for alternative

4    communication methods, defending its reliance on a chat-based support system

5    despite Plaintiff's explicit disclosures that this method was medically

6    inappropriate. The response made no offer to modify policies, provide

7    accommodation-sensitive alternatives, or improve accessibility for future test-

8    takers with similar disabilities.

9         39. Prometric also failed to provide any documentation of its internal

10   investigation, did not share any findings, and offered no corrective action plan.

11   Rather than engage in a collaborative process to resolve Plaintiff's concerns,

12   Prometric's response deflected responsibility to Plaintiff and LSAC, avoiding

13   accountability under the ADA and Section 504.

14        40. Prometric's May 13, 2025 response—issued after multiple direct

15   notifications and a final opportunity to resolve the matter—exemplifies its failure

16   to engage in good faith or fulfill its legal obligations. Despite being fully aware of

17   Plaintiff's documented disabilities, her real-time disclosures of dizziness, cognitive

18   shutdown, and repeated physical distress during troubleshooting, Prometric refused

19   to acknowledge the medical impact of its procedures or take any corrective action.

20   This formal denial reflects a callous disregard for Plaintiff's health and legal rights,

1  underscoring the necessity of judicial intervention to address ongoing

2  discriminatory practices. Prometric's refusal to revise its support methods or

3  consider alternative communication channels for future test-takers demonstrates

4  that its discriminatory practices are not isolated incidents but pose an ongoing risk

5  of harm to similarly situated individuals. Judicial intervention is necessary to

6  compel compliance with federal disability rights obligations and to prevent future

7  violations. (See **Exhibit H**, Prometric Response Letter dated May 13, 2025.)

8
9  **PATTERN OF RECURRING TECHNICAL FAILURES AND BLAME**
10  **SHIFTING BY PROMETRIC**
11
12  40.1 In addition to Plaintiff's personal experiences described herein,

13  Prometric's long-standing pattern of technical failures, improper blame-shifting,

14  and failure to remediate known deficiencies is well-documented in public

15  complaints filed with the Better Business Bureau. These complaints, spanning

16  from 2022 through 2024 within the subset I reviewed, consistently describe

17  examinees being forced to retake exams multiple times due to persistent technical

18  malfunctions, only to have Prometric summarily attribute the failures to the test

19  takers' internet connections or devices—without providing any technical evidence

20  to substantiate such claims. A reasonable response would involve presenting clear

21  diagnostic proof showing the failure originated on the user's end; instead,

22  Prometric uniformly places fault on the examinee while offering a free retest "as a

1    courtesy," a practice inconsistent with their purported lack of responsibility. The

2    frequency of these free retakes, despite the absence of proof that user error was the

3    cause, reflects Prometric's tacit acknowledgment of recurring system-side failures.

4    Rather than investigating or correcting these deficiencies, Prometric has relied on

5    rote responses that deflect responsibility while offering superficial remedies

6    designed to placate individual complainants without addressing systemic flaws.

7    Representative examples of these complaints are attached as Exhibit I.

8

9    **SECTION IV: JURISDICTION AND VENUE**

10    41. This Court has subject matter jurisdiction over this action pursuant to 28

11    U.S.C. §1331, because this action arises under the laws of the United States,

12    including the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§

13    12101 et seq. ("ADA"), and Section 504 of the Rehabilitation Act of 1973, 29

14    U.S.C. § 794 ("Section 504").

15    42. This Court has jurisdiction to grant declaratory and injunctive relief

16    pursuant to 28 U.S.C. §§ 2201 and 2202 and Federal Rules of Civil Procedure 57

17    and 65.

18    43. This Court has supplemental jurisdiction over Plaintiff's related state law

19    claims, including claims for negligence and intentional infliction of emotional

1  distress, pursuant to 28 U.S.C. § 1367, because those claims form part of the same

2  case or controversy under Article III of the United States Constitution.

3  44. Venue is proper in the United States District Court for the Northern

4  District of Georgia pursuant to 28 U.S.C. § 1391(b), because a substantial part of

5  the events or omissions giving rise to the claims occurred within this judicial

6  district, and Plaintiff resides in this district.

7  45. Defendants are subject to personal jurisdiction in this district because

8  they purposefully availed themselves of the privilege of conducting activities in

9  Georgia by contracting with and administering LSAT testing to residents of this

10  State, including Plaintiff, and by operating platforms and services that caused harm

11  to Plaintiff within this jurisdiction.

12
13  **SECTION V: CAUSES OF ACTION**
14
15
16  **COUNT I**
17  **Violation of Title III of the Americans with Disabilities Act**
18  **(42 U.S.C. §§ 12181–12189)**
19  **Against All Defendants**
20

21  46. Plaintiff re-alleges and incorporates by reference all preceding

22  paragraphs as though fully set forth herein.

23  47. Title III of the Americans with Disabilities Act prohibits discrimination

24  on the basis of disability in the full and equal enjoyment of the goods, services,

1  facilities, privileges, advantages, or accommodations of any place of public

2  accommodation. 42 U.S.C. § 12182(a).

3      48. Defendants LSAC and Prometric are public accommodations under 42

4  U.S.C. §12181(7)(J).

5          48.1 Testing services offered by LSAC and its contracted vendors,

6          including administration of the LSAT, are expressly recognized as

7          public accommodations under 42 U.S.C. § 12181(7)(J). Courts have

8          consistently held that testing entities fall within Title III of the ADA

9          when delivering examination-related services, including Doe v.

10         National Board of Medical Examiners, 199 F.3d 146 (3d Cir. 1999).

11     49. Plaintiff is an individual with a disability under 42 U.S.C. § 12102(1),

12  based on her documented vestibular and cognitive processing impairments.

13         49.1. Plaintiff's vestibular dysfunction, cognitive processing

14         impairments, migraines, and related medical conditions substantially

15         limit her ability to perform major life activities, including reading,

16         concentrating, processing visual information, and interacting with

17         digital screens for extended periods, as defined in 42 U.S.C. §

18         12102(2)(A).

19     50. Defendants approved Plaintiff's accommodations but failed to

20  implement them during her April 14 and April 22, 2025, LSAT test sessions.

1    Despite knowledge of prior accommodation failures during the April 14 test,

2    LSAC failed to inform Prometric or implement safeguards to prevent recurrence

3    during the April 22 session. A true and correct copy of Plaintiff's accommodation

4    approval letter is attached hereto as Exhibit F, which was in LSAC's possession

5    well before the April 2025 exams, and which LSAC failed to enforce with its

6    contracted vendor

7             50.1. The obligation to implement approved testing accommodations

8                    under the ADA extends beyond the timed examination itself to all

9                    ancillary processes that materially affect a test taker's ability to access

10                   and participate in the exam, including identity verification,

11                   troubleshooting, proctoring interactions, and technical support. See 28

12                   C.F.R. § 36.309(b)(1)(ii); see also Doe v. National Board of Medical

13                   Examiners, 199 F.3d 146, 154–56 (3d Cir. 1999). Defendants' failure

14                   to implement accommodations during these critical access points was

15                   a direct and proximate cause of Plaintiff's exclusion from full and

16                   equal participation, constituting actionable discrimination under Title

17                   III of the ADA.

18        51. Prior to the April 2025 LSAT administrations, Plaintiff submitted a

19   formal accommodation request (**Exhibit A**) supported by medical documentation

20   (**Exhibit D**), detailing the full scope of her impairments. These disclosures

1    established that the requested accommodations were medically necessary to

2    prevent foreseeable and serious harm.

3        52. Plaintiff verbally disclosed her accommodation needs and described her

4    escalating symptoms in real time. Defendants ignored these disclosures and

5    continued to impose inaccessible troubleshooting protocols. This failure to modify

6    procedures was the direct and proximate cause of Plaintiff's exacerbated symptoms

7    and denied her meaningful access to the LSAT.

8        53. Defendants' assertion that Plaintiff received "her accommodations

9    during the test" disregards their legal duty under the ADA to ensure access to the

10    entire testing process. Their failure to provide accommodations during critical pre-

11    test stages—such as troubleshooting and proctor connection—was a direct and

12    proximate cause of Plaintiff's impaired ability to complete the exam under

13    equitable conditions.

14            53.1 Defendants may attempt to argue that Plaintiff's April 2025

15            LSAT score of 137 reflects her inherent test-taking abilities, thereby

16            undermining the material impact of the accommodation failures. This

17            argument ignores critical facts. Plaintiff's prior LSAT scores were

18            obtained without accommodations and with minimal preparation,

19            whereas the April 2025 attempt followed months of structured study

20            with two private tutors and specialized cognitive training tools.

1    Despite this investment, Plaintiff's performance was significantly

2    hindered by prolonged troubleshooting, physical symptoms, and

3    cognitive exhaustion directly caused by Defendants' failure to

4    implement approved accommodations. Courts have rejected the notion

5    that past performance excuses present discriminatory barriers when

6    accommodation failures interfere with a test taker's ability to perform.

7    See Doe v. National Board of Medical Examiners, 199 F.3d 146 (3d

8    Cir. 1999). Accordingly, Plaintiff's score increase does not negate the

9    fact that Defendants' actions denied her an equal opportunity to

10   perform to her full potential.

11

12   53.2 Courts have consistently recognized that testing entities subject

13   to the ADA are obligated to provide accommodations that ensure full

14   and equal access to all stages of the testing process—not merely the

15   scored portion. In Doe v. National Board of Medical Examiners, 199

16   F.3d 146 (3d Cir. 1999), the court held that failure to provide

17   accommodations addressing a test taker's functional limitations

18   constitutes a denial of access under Title III of the ADA, even when

19   the test itself is otherwise administered uniformly. This obligation

20   encompasses all ancillary procedures that materially affect a test

1    taker's participation, including identity verification, proctor

2    connection, troubleshooting, and navigation of platform instructions.

3    Defendants' failure to implement accommodations during these

4    phases mirrors the deficiencies identified in Doe and constitutes a

5    direct violation of 42 U.S.C. § 12189 and 28 C.F.R. § 36.309.

6

7    54. Defendants' failure to implement accommodations and modify

8    procedures denied Plaintiff full and equal access to LSAT testing, in violation of

9    42 U.S.C. §§ 12182(a) and 12182(b)(2)(A)(ii). Plaintiff explicitly informed

10    Prometric staff at least four times that scrolling and lengthy troubleshooting

11    instructions were medically contraindicated due to her approved accommodations.

12    Despite these real-time disclosures (see Exhibit C), support agents failed to adapt

13    their communication methods or offer accommodation-sensitive alternatives. This

14    disregard of Plaintiff's functional limitations constitutes a breach of Defendants'

15    statutory duties and caused direct harm to Plaintiff's ability to access and

16    participate in the testing process.

17    55. When Plaintiff reported these failures through LSAC's formal complaint

18    channels, Defendants responded by deflecting responsibility and denying any

19    violation of their legal obligations. LSAC attributed the technical issues to

20    Plaintiff's internet connection without evidence and offered superficial remedies

1    without acknowledging the failure to implement accommodations. Prometric, in its

2    formal May 13, 2025 response (Exhibit H), denied any wrongdoing and dismissed

3    Plaintiff's documented impairments as irrelevant, attributing all issues to user error

4    and external factors. These responses reflect a willful disregard for Plaintiff's

5    federally protected rights and demonstrate a failure to engage in good faith

6    compliance with the ADA and Section 504.

7          55.1 Prometric's refusal to provide alternative communication

8          methods, reliance on inaccessible troubleshooting procedures, and

9          disregard for Plaintiff's disclosed impairments were the direct and

10         proximate cause of Plaintiff's impaired test performance, physical

11         distress, emotional harm, and exclusion from the Fall 2025 law school

12         admissions cycle. LSAC shares responsibility for these harms by

13         failing to ensure its contracted vendor complied with Plaintiff's

14         approved accommodations, despite being on notice of prior violations.

15

16         55.2 Prometric's documented denial of accommodation failures

17         underscores its refusal to fulfill its obligations under Title III of the

18         ADA. Rather than acknowledge the impact of its inaccessible

19         procedures, Prometric shifted blame to Plaintiff, ignoring both her

27

1    real-time disclosures and the clear requirements of federal disability

2    law.

3

4    55.3 Defendants' assertion that accommodations were provided

5    during the scored portion of the exam fails to negate their legal duty to

6    ensure full and equal access to the entire testing process. Courts have

7    consistently held that testing accommodations extend to all

8    components essential to accessing and completing the test. See 28

9    C.F.R. § 36.309; Enyart v. National Conference of Bar Examiners,

10   630 F.3d 1153 (9th Cir. 2011). Defendants' failure to provide

11   necessary supports during pre-test troubleshooting, identity

12   verification, and technical support phases constituted actionable

13   discrimination.

14

15   55.4 Defendants may contend that Plaintiff's score increase from prior

16   attempts weakens her claim of injury. However, this argument

17   mischaracterizes the nature of the harm. Denial of equal access is

18   actionable under federal law regardless of final score outcomes.

19   Plaintiffs' April 2025 performance was demonstrably impaired by the

20   accessibility barriers her accommodations were designed to mitigate.

1    The modest score increase—achieved despite Defendants' failures—

2    does not negate the injury but rather illustrates Plaintiff's preparation

3    and perseverance. Courts have recognized that denial of meaningful

4    access, even absent drastic outcome changes, constitutes a valid claim

5    under the ADA and Section 504.

6

7    55.5 While Plaintiff expressed hesitation to retake the LSAT

8    immediately following the April 2025 incidents due to severe

9    emotional and physical distress, this was a direct result of Defendants'

10    discriminatory actions. Plaintiff remains willing to pursue retesting

11    under conditions that fully implement her approved accommodation.

12

13    56. Plaintiff seeks declaratory and injunctive relief, compensatory damages,

14    costs, and any other relief deemed appropriate under 42 U.S.C. §§ 12181–12189,

15    Section 504 of the Rehabilitation Act, and applicable state law.

16

17                                    **COUNT II**

18    **Violation of Section 504 of the Rehabilitation Act of 1973**
19    **(29 U.S.C. § 794)**
20    **Against All Defendants**
21

1    57. Plaintiff re-alleges and incorporates by reference all preceding

2    paragraphs.

3    58. Section 504 of the Rehabilitation Act prohibits discrimination on the

4    basis of disability by any program or activity receiving federal financial assistance.

5    59. Prometric is a direct recipient of federal financial assistance through its

6    administration of federally funded examinations, including contracts under the

7    Defense Activity for Non-Traditional Education Support (DANTES) program,

8    subjecting it to Section 504 compliance.

9    59.1 While LSAC does not directly receive federal financial

10    assistance, its LSAT administration services are functionally

11    integrated with the admissions processes of law schools that do

12    receive Title IV federal funding. Courts have recognized that when a

13    non-recipient entity's services are inextricably linked to federally

14    funded programs. Section 504 obligations may attach to ensure

15    disabled individuals are not excluded from participation in federally

16    supported educational opportunities.

17    59.2 Even if LSAC does not directly receive federal funding, entities

18    whose services are inextricably intertwined with federally funded

19    programs may be subject to Section 504. See U.S. Dep't of Transp. v.

1   Paralyzed Veterans of Am., 477 U.S. 597, 606 n.11 (1986).

2   Prometric's receipt of federal funds through programs such as

3   DANTES triggers Section 504 obligations, and LSAC's contractual

4   delegation of core testing functions to Prometric does not insulate

5   LSAC from liability where it maintains control over exam

6   accessibility and administration.

7   60. Plaintiff is a qualified individual with a disability under Section 504.

8   61. Defendants denied Plaintiff equal access to LSAT testing by failing to

9   implement accommodations and forcing her to endure processes that exacerbated

10  her impairments. These actions violated Section 504, caused measurable harm, and

11  excluded Plaintiff from participation in a federally connected program.

12  62. Plaintiff's disabilities were not only documented and pre-approved by

13  LSAC, but reiterated in real time during Prometric's technical troubleshooting. She

14  specifically stated, on multiple occasions, that the mode of communication being

15  used was exacerbating her symptoms and hindering her ability to proceed—yet no

16  modifications were made.

17  **COUNT III**
18  **Failure to Provide Effective Communication**
19  **(42 U.S.C. § 12182(b)(2)(A)(iii))**
20  **Against All Defendants**
21

31

1    63. Plaintiff re-alleges and incorporates all preceding paragraphs.

2    64. The ADA requires public accommodations to ensure effective

3   communication with individuals with disabilities by providing auxiliary aids and

4   services as necessary.

5    65. Defendants relied on fast-paced chat, long blocks of scrolling text, and

6   nonverbal support channels despite knowing Plaintiff had disabilities that made

7   such communication inaccessible. Plaintiff notified Defendants of this issue in real

8   time and was ignored.

9    66. Specifically, Plaintiff asked Prometric staff at least four times to stop

10  using scroll-based or dense text support because it was exacerbating her medical

11  condition. This refusal to adapt the method of communication—despite repeated

12  accommodation-based requests—violated Defendants' duty to ensure effective

13  communication under 42 U.S.C. § 12182(b)(2)(A)(iii).

14    66.1. The duty to provide effective communication under 42 U.S.C. §

15    12182(b)(2)(A)(iii) is independent of other accommodation

16    obligations and applies to all interactions with disabled individuals,

17    including technical support and troubleshooting. The failure to modify

18    communication methods in response to Plaintiff's disability-related

19    disclosures constitutes a separate violation of Title III.

20

**COUNT IV**
**Negligence**
**Under Georgia Common Law**
**Against All Defendants**

67. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

68. Under Georgia law, "[e]very person owes to others a duty of ordinary care in all his activities." Bradley Center, Inc. v. Wessner, 250 Ga. 199, 200 (1982); see also Smith v. Hosp. Auth. of Terrell Cnty., 161 Ga. App. 657 (1982).

69. Defendants owed Plaintiff a duty of reasonable care in administering the LSAT in a manner consistent with her known disabilities and approved accommodations.

70. Defendants breached that duty by implementing procedures that forced Plaintiff to endure known accessibility barriers and failed to take reasonable steps to accommodate her needs, despite actual knowledge of her disabilities and multiple real-time disclosures.

71 As a direct and proximate result of Defendants' breach, Plaintiff suffered foreseeable harm including emotional distress, cognitive deterioration, physical symptoms of vestibular overload, and loss of professional opportunity.

72. Plaintiff seeks damages for the injuries caused by Defendants' negligent conduct.

**COUNT V**
**Intentional Infliction of Emotional Distress (IIED)**
**Under Georgia Common Law**
**Against All Defendants**

73. Plaintiff re-alleges and incorporates by reference all preceding paragraphs.

74. To prevail on a claim for intentional infliction of emotional distress under Georgia law, a plaintiff must show: (1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) causing emotional distress; (4) that is severe. Tino v. Crowell, 241 Ga. App. 472, 476 (1999); Mills v. B. L. Jones & Assocs., 187 Ga. App. 148 (1988).

75. Defendants' conduct—knowingly subjecting Plaintiff to harmful, inaccessible procedures in violation of her documented accommodations and continuing to do so even after she verbally expressed dizziness, exhaustion, and confusion—demonstrated willful indifference to her known disabilities and rose to the level of extreme and outrageous behavior under Georgia law.

76. Defendants acted with reckless disregard for Plaintiff's well-being, knowing that the procedures they imposed would exacerbate her disabilities.

77. As a direct result, Plaintiff experienced severe emotional distress, humiliation, cognitive shutdown, and physical disorientation during and after the testing process. The impact was compounded by Plaintiff's repeated, ignored

1  requests to avoid scrolling or lengthy text—requests made at key points during the

2  live chat and expressly tied to her disability.

3      78. Plaintiff is entitled to compensatory damages for the emotional and

4  psychological harm she endured.

5
6
7                          **COUNT VI**
8      **Constructive Denial of Accommodated Access**
9                    **Against All Defendants**
10
11      79. Plaintiff re-alleges and incorporates all preceding paragraphs.

12      80. Defendants' failure to implement accommodations and provide

13  accessible procedures constructively denied Plaintiff access to the LSAT—a

14  critical, high-stakes professional exam.

15      81. Without a valid score, Plaintiff lost eligibility to apply to law school for

16  Fall 2025, a direct and measurable consequence of Defendants' actions.

17      82. This denial of equal access constitutes a statutory violation under federal

18  disability rights law and directly resulted in Plaintiff's exclusion from a critical

19  educational opportunity.

20

21                          **COUNT VII**
22      **Declaratory and Injunctive Relief**
23                    **Against All Defendants**
24
25      83. Plaintiff re-alleges and incorporates all preceding paragraphs.

35

1    84. An actual controversy exists between the parties regarding Defendants'

2    obligations under federal disability law.

3    85. Plaintiff seeks a declaration that Defendants violated her rights under the

4    ADA and Section 504.

5    86. Plaintiff also seeks injunctive relief compelling Defendants to revise

6    their policies and procedures to ensure accessible, nonvisual, and non-chat-based

7    support options are offered to all disabled test takers with cognitive or vestibular

8    impairments.

9    86.1. Plaintiff has standing to seek injunctive relief because she

10    alleges a real and immediate threat of repeated injury. Defendants'

11    refusal to modify policies or adopt alternative support methods for

12    individuals with vestibular and cognitive processing impairments

13    demonstrates an ongoing risk of future harm. See Houston v. Marod

14    Supermarkets, Inc., 733 F.3d 1323, 1328–29 (11th Cir. 2013)

15    (plaintiff seeking to return to non-compliant facility has standing for

16    injunctive relief).

17

18    **<u>PRAYER FOR RELIEF</u>**

19    WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her

20    favor and against Defendants and award the following relief:

36

1    **Declaratory Relief:** A judicial declaration that Defendants violated Plaintiff's

2    rights under Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181–

3    12189, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and

4    applicable Georgia state law;

5    **Injunctive Relief:** An order requiring Defendants to adopt and enforce policies

6    and procedures that ensure effective communication and consistent implementation

7    of approved accommodations for disabled test takers, including but not limited to:

8    a. Providing alternative, non-chat-based communication methods for test-

9       takers with vestibular and cognitive processing impairments;

10    b. Implementing mandatory training for proctors and technical support staff on

11       disability accommodations, effective communication, and real-time

12       responsiveness;

13    c. Establishing protocols to prevent prolonged, cognitively demanding

14       troubleshooting procedures inconsistent with approved accommodations;

15    d. Requiring internal accountability measures to ensure real-time

16       responsiveness when test-takers disclose that existing procedures are causing

17       physical or cognitive harm, including escalation to a trained supervisor with

18       authority to modify or suspend harmful protocols;

19    e. Requiring public reporting of accommodation compliance measures to

20       ensure ongoing oversight and transparency.

1    Injunctive relief is necessary to remedy Defendants' pattern of non-compliance,

2    prevent future violations, and protect similarly situated individuals from enduring

3    the same discriminatory barriers.

4    **Compensatory Damages:** For the physical, neurological, cognitive, and

5    professional harm Plaintiff sustained as a direct result of Defendants' conduct—

6    including pain, anxiety, humiliation, cognitive overload, dizziness, disorientation

7    and loss of educational opportunity; Plaintiff also seeks reimbursement for all

8    direct financial losses incurred due to Defendants' failure to provide accessible

9    testing, including but not limited to LSAT registration fees, private tutoring, study

10   materials, digital application subscriptions, and other preparation related costs.

11   Plaintiff further seeks equitable relief, including but not limited to restoration of

12   her LSAT eligibility, removal of her April 2025 score from her record, and the

13   option to retake the LSAT at no cost under fully accommodated and accessible

14   conditions, should she choose to pursue that option. All compensatory damages are

15   against Defendants, jointly and severally for harms caused by their individual and

16   collective actions.

17   **Court Costs and Filing Fees:** Recovery of all costs associated with bringing this

18   action, including filing fees and any other litigation-related expenses permitted by

19   law;

20   **Pre- and Post-Judgment Interest:** On all monetary damages as permitted by law;

1  any other and further relief the Court deems just, equitable, and appropriate under

2  the circumstances.

3  ## **DEMAND FOR JURY TRIAL**

4  Plaintiff brings this action to vindicate her right to fair and equitable access under

5  federal law, and to prevent future disabled test-takers from enduring the same

6  unlawful barriers. Plaintiff hereby requests a jury trial as to all issues.

7

8  Dated May 16, 2025

9
10
11  Respectfully Submitted,

12  /s/ Nicole McHenry
13  Nicole McHenry
14  PO Box 73
15  Marietta GA 30061
16  678-362-7835
17  namchenry35@gmail.com
18  Pro Se Plaintiff
19
20
21

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NICOLE MCHENRY

Plaintiff

    v.

LAW SCHOOL ADMISSION COUNCIL, INC.

and PROMETRIC LLC

Defendants

CIVIL ACTION NO: _____

# CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of May, 2025, I caused true and correct copies of the following documents to be served via certified mail, return receipt requested, upon each Defendant listed below:

1. Complaint for Violations of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Related State Law Claims;

2. Summons for Law School Admission Council, Inc.;

3. Summons for Prometric LLC;

4. Exhibit List and Exhibits A through I (as filed);

5. Motion to E-File & Free Look Access with Proposed Order

6. Motion to Seal Exhibit D with Proposed Order

7. Certificate of Service


Served Upon:

Law School Admission Council, Inc.

c/o Corporation Trust Company

Corporation Trust Center

1209 Orange Street

Wilmington, DE 19801


Prometric, LLC

c/o United Agent Group Inc

1521 Concord Pike

Suite 201

Wilmington DE 19803


Dated: May 16, 2025


Respectfully Submitted,

/s/ Nicole McHenry

Nicole McHenry

PO Box 73

Marietta GA 30061

678-362-7835

namchenry35@gmail.com

Pro Se Plaintiff

2